Diane C. Bass, State Bar # 155670
Law Office of Diane C. Bass
A Professional Law Corporation
5440 Trabuco Road
Irvine, California 92620

Attorney for Defendant
JAMES NATE BELL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  vs.<br><br>JAMES NATE BELL,<br><br>  Defendant | Case No.: 8-20-CR-018-JVS-1<br><br>**DEFENDANT JAMES NATE BELL'S POSITION RE: SENTENCING FACTORS; EXHIBITS AND DECLARATION OF COUNSEL**<br><br>HEARING DATE: AUGUST 14, 2023<br>HEARING TIME: 9:00 A.M. |

Defendant, JAMES NATE BELL, by and through his attorney of record, Diane C. Bass, hereby submits this position in support of a sentence of probation as reasonable but not greater than necessary to satisfy the sentencing factors enumerated in 18 U.S.C. 3553(a).

This memorandum is based on the attached memorandum and supporting exhibits, the files and records in this case and any argument that the court may allow.

Dated: July 18, 2023                    Respectfully submitted,

                              _____/s/Diane Bass____
                              Diane C. Bass
                              Attorney for Defendant
                              James Nate Bell

DEFENDANT JAMES NATE BELL'S POSITION RE: SENTENCING FACTORS

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.  INTRODUCTION

Mr. Bell entered a plea of guilty to attempted to obstruction of a criminal investigation in health care offense in violation of title 18, U.S.C. § 1518 (a).   The base offense level for this offense is 14.   The adjustment for acceptance of responsibility is 2 levels. The parties have stipulated that in anticipation of the amendment to the Chapter Four Sentencing Guidelines at § 4.C.1, the government will recommend a two-level downward variance as it has been determined that Mr. Bell has zero criminal history points.  The adjusted offense level is therefore, 10.  Mr. The resulting sentencing range is 6 to 12 months which falls into Zone B of the guidelines. Zone B allows for a sentence of probation with a condition of home confinement. Mr. Bell is also hopeful that the government will move for a downward departure pursuant to USSG § 5K1.1 bringing the adjusted offense level even lower.  Mr.Bell therefore, submits that probation is a reasonable sentence in this case, taking into consideration all the factors set forth herein.

### II.  OBJECTIONS TO THE PSR

Probation is recommending a sentence of 12 months and 1 day which is the mid-range of the offense guidelines taking into account only the base offense level and the 2 level adjustment for acceptance of responsibility. Yet, at the same time, probation states that they are recommending a sentence at the low end of the sentencing range which is 10 months.  This appears to be a mistake.

**Condition 6 has No Nexis to the Offense and Should be Stricken**

This condition severely limits Mr. Bell's ability to earn a living to support his family. He has not pled guilty to anything related to pay stubs or tax deductions.  Additionally, the probation

DEFENDANT JAMES NATE BELL'S POSITION RE: SENTENCING FACTORS

2

officer states that Condition 6 is related to the offense in that he committed the offense to protect the fraud he was perpetrating. Again, there was no fraud. Mr. Bell has always been an entrepreneur. In fact, probation confirmed that he will be working as a ***partner/project manager*** for Boone Built Solutions, LLC in San Antonio, Texas. This condition is purely gratuitous and should be stricken.

**The Imposition of a Fine is inappropriate in this case**

Mr. Bell has agreed to forfeit $500,000.00 to the government even though he has not pled guilty to fraud. Mr. Bell lost a great deal as a result of the Indictment in this case. The vast majority of Mr. Bell's assets were seized at the outset of this case. Mr. Bell had millions of dollars in an investment account. He was using the interest from those funds to pay his mortgage. Once the assets were seized, he was unable to pay his mortgage. He was forced to sell his home, where he resided with his wife and daughters, at a significant loss. He also lost all the interest he would have earned from his investments. All in all, he probably lost around one million dollars. Also, as a result of selling his home, he had to sell his rental property in Brea and move to Texas where he is building a home on a piece of land he owned. When he and his wife and young daughters moved, their older daughter wanted to remain in California to finish school here. Hence, they lost more than a year with their older daughter.

Furthermore, Mr. Bell has no liquid assets. He has a negative monthly cash flow.

**On page 6** of the recommendation letter, probation states, "In aggravation, the scheme that led to the obstruction charge was serious in that Bell used his companies to engage in healthcare fraud for over two years." Mr. Bell did NOT engage in health care fraud. He did not plead guilty to health care fraud. Mr. Bell pled guilty to Attempted Obstruction of Justice, not health care fraud. When drafting the marketing contracts in the underlying conduct, Mr. Bell consulted with

DEFENDANT JAMES NATE BELL'S POSITION RE: SENTENCING FACTORS

3

Attorney Tony J. Park. Dr. Park's firm is solely dedicated to pharmacy law. Dr. Park is a registered Pharmacist and an Attorney. Dr. Park serves as General Counsel for the nation's largest association of pharmacists, the California Pharmacists Association, and regularly advises on proposed bills and regulation that affect pharmacy practice and healthcare. Dr. Park also teaches Pharmacy Law and Ethics at several California schools of pharmacy. Mr. Bell chose to hire Dr. Park to assist him in drafting his Sales Commission Areements, specifically due to his rare and exceptional qualifications.  *See Dr. Park's bio attached as Exhibit "A."* Dr. Park advised Mr. Bell that he could not accept or pay marketing fees on any government insurance programs "like Medicare and Medical."    At the time, Dr. Park did not mention Tricare and Mr. Bell had no idea that Tricare was a government program.  It was not until he learned that he was under investigation, long after his pharmacy was closed, that he learned that Tricare is a government program, at which time he approached the individuals he was using as marketers, with a revised contract.  However, after taking the revised contract to those individuals, he went home and realized how stupid that was and never followed up.  The revised contract was never signed and never shown to any government agent, in this case, the FBI.

When speaking with Dr. Park on or around March 26, 2021, defense counsel confirmed with Dr. Park that he did, in fact assist Mr. Bell in drafting his Sales Commission Agreement. Park was shown a redlined version of the contract and acknowledged that those were his redlines.  He also confirmed with counsel that at that time, almost no one, outside of the military, knew what Tricare was.  *See Attached Declaration of Counsel.*

Therefore, there was never ANY intent to defraud a government insurance program.  No fraud occurred.

4

DEFENDANT JAMES NATE BELL'S POSITION RE: SENTENCING FACTORS

**The PSR at Page 7, ¶¶ 20 – 31** is a recitation of the facts alleged in the indictment but does not accurately reflect the conduct to which Mr. Bell pled guilty.

### III. ARGUMENT

As this Court well knows, 18 U.S.C. § 3553(a), states that the Court must "impose a sentence sufficient, but not greater than necessary, to comply" with the purposes of sentencing. In undertaking its analysis, the Court considers the advisory sentencing range recommended by the Guidelines and any relevant Guideline policy statements, as well as the sentencing factors set forth below.

### THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

As set forth above, the conduct for which Mr. Bell is being sentenced consists of presenting a back dated a Sales Commission Agreement to the Medical Marketing Company, Products for Doctors, Inc. (PFD) owned in part by co-defendant James Bradford, after learning that he was under investigation and being advised that Tricare is a federal health care benefit program. He back dated the contract to make it appear that the commissions his company paid PFD were for the referral of prescriptions reimbursed by private or PPO insurance plans rather than Tricare. Mr. Bell took the contract to these individuals and left it with them. Upon leaving their office, he realized how stupid it would be to go through with this charade. He simply panicked. He did not follow up with them. They did not follow up with him. The backdated contract was never signed by either party. It was never presented to the FBI.

As for the underlying conduct, Mr. Bell relied on advice of learned counsel when drafting his Sales Commission Agreements. He was not aware that Tricare was a federal health care benefit program.

/ / /

/ / /

## THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

The most accurate reflection of Mr. Bell's history and character can be found in Mr. Bell's letter to the court attached as *Exhibit "C"* as well as the many character letters attached as *Exhibit "D"*. Rather than repeat the contents of those letters here, Mr. Bell submits that the letters speak for themselves.

## TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT

The Sentencing Commission has found that "[t]here is no correlation between recidivism and guidelines' offense level… While surprising at first glance, this finding should be expected. The guidelines' offense level is not intended or designed to predict recidivism." U.S. Sent'g Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 15 (2004) ["U.S. Sent'g Comm'n, Measuring Recidivism"]. See also Part IV.A.3, infra. And according to "the best available evidence, . . . prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen et al., Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science, 91 Prison J. 48S, 50S-51S (2011).

The empirical evidence is unanimous that there is no relationship between sentence length and general or specific deterrence, regardless of the type of crime. See Andrew von Hirsch et al., Criminal Deterrence and Sentence Severity: An Analysis of Recent Research (1999) (concluding that "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"); Michael Tonry, Purposes and Functions of Sentencing, 34 Crime and Justice: A Review of Research 28- 29 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all

appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."); David Weisburd et al., Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes, 33 Criminology 587 (1995) (finding no difference in deterrence for white collar offenders between probation and imprisonment); Donald P. Green & Daniel Winik, Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders, 48 Criminology 357 (2010) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame").

## TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT

Mr. Bell is not going to re-offend. He is literally, re-building his life in Texas. He is personally building the home where he and his family now reside. He is 41 years old. He is a devoted father and husband. Mr. Bell's letter to the court clearly expresses deep remorse for his conduct, which, as previously stated, resulted from a lack of knowledge about Tricare and a stupid, impulsive decision that he did not follow through with.

## THE NEED FOR THE SENTENCE TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW AND PROVIDE JUST PUNISHMENT FOR THE OFFENSE

The defense believes that the sentence requested is sufficient to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense to which Mr. Bell pled guilty.

### IV. Conclusion

For all the reasons set forth herein and in the supporting documents, it is respectfully requested that the Court sentence Mr. Bell to a term of probation as reasonable but not more than necessary to satisfy the purposes of sentencing.

Dated: July 18, 2023                    Respecfully submitted,

_____/s/_____
Diane C. Bass
Attorney for Defendant
James Nate Bell

## DECLARATION

I, Diane C. Bass, hereby declare as follows:

1. I am an attorney at law, duly license to practice in the Central District of California. I am the attorney of record for James Nate Bell in this case.

2. On or around March 26, 2021, I spoke with attorney, Tony Park about Mr. Bell. Mr. Bell signed a waiver of privilege so that Dr. Park could discuss the work he performed for Mr. Bell. I sent Dr. Park the subject Sales Commission Agreement related to the alleged fraud. Dr. Park acknowledged that he advised Mr. Bell regarding this agreement and that the redlines that ultimately became part of the Sales Commission Agreement were his.

3. When I asked Dr. Park whether he specifically advised Mr. Bell concerning Tricare, he did not recall specifically but instead indicated that he most likely referred to government insurance programs in general.

4. When I asked Dr. Park whether it was known that Tricare was a federal insurance program during the time period in question, he replied that most people had never heard of Tricare at that time.

5. I, personally, never heard of Tricare until I was retained to represent someone in a Tricare related case in 2018.

The foregoing is true and correct to the best of my recollection.


Dated: July 18, 2023              _____/s/_____
                                  Diane C. Bass

DEFENDANT JAMES NATE BELL'S POSITION RE: SENTENCING FACTORS